Thank you. Good morning, Joe Robin Davis appearing on behalf of the Joy in this case, purchased this historical church in 2009. State Farm sold it insurance, finding it qualified for coverage. The church and the sanctuary were built in 1927, when Calvin Coolidge was president. Is that significant? Yes, age is the most significant factor here and age is what distinguishes this case from the case relied upon by the district court. It took 85 years for the ceiling to collapse on December 15, 2012, and it would not have taken 85 years had the cause just been faulty construction. The parties agree that there was an abrupt collapse in the church sanctuary, rendering it unfit for its intended purpose. The question then becomes whether this policy covers this abrupt collapse. So you have a collapse, you know it's a collapse, you look to the policy, it says collapses are excluded. But then it says except in these certain circumstances, except is provided in the extended coverage for collapse. So unless the collapse here meets the criteria for this additional or extended coverage, there is no coverage. And that's, you know, where we're going. That's the only place there can be loss. It provides that there is coverage if the collapse is caused by one or more of the following, that being decay that is hidden from view and unknown to an insured. And that is true even if defective or faulty methods of construction contributed there too. Mr. Miller, who was defendant's expert, testified that during that 85 years, because of truss movement and the stress of dead loads on the trusses, the trusses cracked, deteriorated, and lost strength until 85 years after completion, the lathe, L-A-T-H, and plaster fell down into the sanctuary. Judge Drain quoted the engineer hired by one of the contractors for the church, Michael Wise, who said, I think there are really two really significant issues. Is that what you're primarily depending upon, the decay of the building, or is there something additional? Well, I think the decay of the building is pretty clear based on the Hani and something that goes beyond organic rot, which is what Judge Drain agreed upon, and the exclusions do not apply. We don't have any problems with anti-concurrent causation language because the cases upon which State Farm relies had completely different language. That language said only, the cause of the, under the additional coverage, it said you could only have coverage if the And that is the reason that those judges in those cases cited by State Farm held that there was no coverage, because it wasn't only caused by that. This policy does not have that language. If you have decay that is hidden from view and unknown to an insured, you have coverage, even if it's a construction defect, which the policy kind of adds and says, we're gonna reassure you. This is an endorsement or an extension. It's an extension of coverage. So that takes out the issue of the concurrent causation? I think so. I think that once you get to the extension of coverage, it's far more specific in its language, and it specifically says we are going to cover you under these circumstances, even if. So the question really becomes, is there evidence of decay? And based upon the fact that the dictionaries, definitions of decay, were the Michigan Court of Appeals, in the only case that's really on point that has the exact same language, it's not published, but it's a 2014 case, a gradual and progressive decline, a gradual falling into an inferior condition. The court held that the word was not limited to organic rot. And in a State Farm case from the Western District of Pennsylvania, PMW Real Estate versus State Farm, 2013, they looked to the Oxford Dictionary, and it said, a decline in quality, a wasting or wearing away. There's a 2014 case out of New Jersey, a gradual decline in strength. In Quality Time versus West Bend, a District Court Kansas decision from 2013, decay should be construed as a deteriorating change, often gradual from a sound condition. And what we have here is exactly that. Based on Mr. Miller's testimony, he's saying the high dead load stresses in the truss cord members, because the wood decreased strength and value when subjected to high long term loading, which is what he said this was, the loads on the nails plus the constant tension on the nails, resulting in the nails loosening over many years, and the result was an abrupt collapse of the sanctuary ceiling for which the extension of coverage states, we will pay for the loss even if defective methods of construction contribute to the collapse. So your best argument is, as I read your filings, your best argument is to target some decay feature in deterioration and taking out the construction defects. Well, because it doesn't... I realize you want, and I think you need to... If you were to have this court reverse the summary judgment, I think you need to point the court to a feature that would be a function, not so much of the construction defects, but the deterioration. And I'm asking you that very question to see what you would point us to, that in the expert testimony... Yes. Okay, do you get... We do have the expert testimony from Daniel Miller, and he testified on page 16. My question is not so good. What does that mean that a truss would no longer be structurally sound? Answer, what I mean is that it doesn't have the strength it was intended to have. Question, so there was a loss of strength with respect to these top cord members with the cracks? Yes. He would call that... How would you tell this court to view that? What do you... What's your... What do you advocate? Is that reasoning? As far as I'm concerned, that's deterioration, as it fits within the dictionary definition and the definition adopted by the Michigan Court of Appeals in the Honey and Ramiz case. That fits in at least creates a question of fact as to whether or not that's decay. Based on... And there's more testimony that he's given, and he actually wrote... Let me see if I can find it. Both Wise and Miller addressed humidity? Actually, the Lopez guy said humidity was a cause. Okay. So, yeah, he said that. And I think the movie... You've got 85 years, and you look at the cases. The case that the judge relied upon, the Eyde case, that building was four years old. It didn't have time to deteriorate. Obviously, the only cause of that collapse was a design defect. And that policy specifically said it has to be caused only by one of these things, and it wasn't, and therefore the general exclusions apply. But the general exclusions don't apply when you have this type of situation. That's how I read a policy. You go to that portion that applies just to this, and you don't go back to exclusions that don't apply when they... It specifically takes... Collapse coverage is weird, because they take it away. It has all this, and then this part is self contained. Correct. I mean, the part that we're talking about that says, collapse and through... It must be one of these five things, even if construction. Correct. And I think when I looked at it, it's pretty clear. When I took Mr. Miller's deposition... Well, the council will have a chance to correct our understanding of that. It seems that you have the same understanding that I hold right now, but... Right, I do. And that's because it's far more specific. And the case law all throughout the country that addresses this particular policy language says, you can't... You have to harmonize the policy provisions. And in order to do that, you can't have one provision that says, we don't cover decay, and then it says, we do cover decay, but it's hidden. So what the courts have done in a lot of these circumstances have said, okay, if the decay is open, obvious, known to the people, then it's not covered, because it's not hidden decay. And that's one way to harmonize the policy language so that all of the policy language is given effect. And I think the... I can go through and tell you where he said... And the most interesting thing is that Mr. Miller did say that age is really significant with respect to the causation. And that's actually what the judge said in the other case, where he said, in the Travelers versus Ide case, the judge said that in stamped theaters where the building was 49 years old and in the... Your time's expired, so... I'm sorry. If you wish to wrap that up. I do wish to wrap it up. I think the other case law specifically states that these policies, the general exclusions, do not apply, and I think that's the second issue. The first issue... We'll have some time, though. Thank you. Is this Wiley or Weill? It's Wiley. Wiley. Good morning. Amy Wiley on behalf of State Farm. I'll start by saying that the purpose of insurance is to provide the services and not maintenance. And if people or entities wanted maintenance policies, the premiums would be sky high and no one would be able to afford insurance. Yes, I need to know, Ms. Wiley, what do you mean by maintenance policy? How are you... Well, Ms... The appellant is saying the church is very old. It's... This is a result of all the time. It's not a maintenance issue. This was... State Farm knew it was insuring an 85... I don't know when the policy might have been written, but it knew it was insuring a really old church. Yes. And it insures against decay. It does. Even where... Well, it insures for collapse caused by decay. It does not insure for decay. Even in the... Even when it coincides with construction defects. Correct. Do you agree with that? I do agree. That's the section of the policy I wanted you to correct us if we were... The collapse extension provides coverage for collapse. And that extension was issued when the insurance company knew it was an 85 year old church. But it's not an endorsement. It's in the... It's an extension which I thought... No, it's part of... Trumps other parts of the policy. I would disagree with that. Oh, okay. I would say that because of Michigan's anti concurrent causation law, which is fairly clear, that if it's not ambiguous, that other exclusions could apply. You maintain that argument even in this circumstance with an extension. I saw that argument in your brief. Well, because there's not the word only. If it had the word only, then there wouldn't be any need for an exclusion because there would only be collapse coverage in those instances. So you can have a general exclusion that speaks in general language and then you can provide as the insurer and draft another provision within that policy that has a specificity to allow a concurrent causation. And you say that language is meaningless? I'm saying that the language... What language is meaningless? The language of the extension. If what you're saying is the general exclusion trumps specific language, I've not seen case law that would support that. My understanding of case law is that you have to give meaning to every language in a contractual relationship and that none of it can be surpluses. So here you have a general exclusion and then you have an extension, which is specific language citing when there will be coverage. Is your argument that the general exclusion language trumps the specific extension language in your own policy? I would say that the general exclusion for cracking would trump that specific coverage that's given. The general exclusion for faulty construction or... We're just talking about collapse here, it's cracking to the max when the ceiling falls in. Correct, but there's still no decay, so there's no coverage. Okay, you just heard your colleague explain where she views the decay as emanating. So what particularly do you quarrel with, with respect to what we were just told by counsel? That here, that the trial court got it right, Judge Drain took the Travelers v. Ide opinion, which is the only opinion that has facts that are almost directly on point to these facts. Does it have that same extension provision? That policy didn't, did it? It didn't address, it did not address. It didn't have the same contract you're worrying about here today. It does not have the same contract, does it? No. Okay, that's where the rubber meets the road, the contract. Right, but if you don't have decay, you can't have the additional coverage. I just heard the argument that there is decay. There is not decay here. Mr. Miller, there is not decay here. Is that a factual issue? Yes, Judge Drain found that there was no evidence of hidden decay. We all know that decay is a major point of contention here. The definition, the view of Judge Drain about what decay had to be was organic rot. Right, or deterioration. There are other definitions, mind you, that you represent an insurance company, so you know this, that there are other definitions, all of which need to be taken into account in construing the contract. So there are other definitions that are just deterioration, doesn't necessitate organic rot. We need you to address that. Okay. Mr. Miller's testimony was that the roof of the building, Mr. Miller's testimony taken as a whole, understand that the piecemeal portions that were given are not his testimony as a whole, but that was that the trusses sit on the walls, the walls cannot resist the lateral pressure from the trusses, they bowed, which allowed the heels of the trusses to move, and then the moving of the heels... Is this the construction deep pit? This is what the appellant is saying is decay, when the wood cracked. The appellant is saying that the crack in the wood is decay. The church was improperly designed, it couldn't bear the load, the wood had no deterioration from a normal state, it just cracked. Isn't her argument, and doesn't your argument, aren't they both tied to the age of the structure, even in the Ede opinion? Doesn't Ede recognize that the issue of deterioration, decay over time matters? Yes, however, just because it cracked after 85 years doesn't mean that's decay. Other roofs last far longer than 85 years and don't fall in. So just because... I'm struggling with the way you have explained the definition in Ede, because the Ede case itself goes on to explain what decay means, and the comparators that it discusses are two cases that have a broader definition of decay, Stram and Northeastern Center. In the end, Ede says, my definition is not so different from theirs, specifically says, in each of those cases, the cause of the decay was at its root due to the deterioration of a matter from its normal state. So the court there is endorsing the fact that the Ede definition of organic rot or decay qualifies in these aging buildings, and then Ede says, here's the difference. The Ede building's five years old. In five years, that sort of decay does not occur, so it was just a construction problem, we're done. But the approval of the fact that his very definition of decay could encompass what goes on in aging seems to me implicit or explicit in the Ede case, which isn't that exactly your opposing counsel's argument? Well, the difference in almost all of the cases cited is that there was some sort of material, foreign substance that contributed to the so called decay. In Hani, there was a chemical... Right. And in many of the other cases, and actually, it's distinguishable because there was water that got into some of the wood, there was other contributing factors. How about the humidity here? Do you discount that in as much as there is testimony about humidity affecting it? Do you discount that? I do. Well, to the extent that it came from Mr. Lopez, because he's a builder. He is a builder, he's not an engineer, he can't... Non qualified. Correct. Yes. But Mr. Miller, the qualified expert, his testimony as a whole says that it was the design defect that caused the crack to make it fall. That is it. So these other cases that find that the age is a contributing factor, they involve basically any foreign substance that's put on the wood that contributed to whatever it was that caused the collapse. And another important note is that a few of those cases have extremely different standards of interpretation of insurance contracts than that of Michigan. The Travelers case also noted that when it did adopt that broad definition, it noted that the other courts justified their definitions because there was something akin to organic rot that was a partial cause of the damage. So, and that kind of goes back to my point that there was something foreign to the wood or the decaying substance that accelerated the decay. The humidity... Assume for a moment that the opinion is cognizable. Legally, we will accept the opinion about humidity. Where would you stand on that in terms of decay if humidity played a role in weakening the wood? The weakening of the wood occurred because of the crack. There was no evidence of any decomposition of the wood. Is your question, did humidity cause it to crack? Because Mr. Miller testified... It weakened it so that it would crack sooner, better. There's no evidence of that. But, I mean, Mr. Miller, the engineer, testified that it was the design of the wood that caused it to crack because it could not bear the load. Yes, we're aware of that. Okay. The trial court's analysis, it got it right. It was based on the facts of this case because there were no outside contributing factors and there was nothing that anyone found here that would point to the wood decaying. It simply cracked. There's no other way to put it. With regard to the court's finding that there was no hidden decay, again, the court's analysis and opinion based on the definition of decay, it was proper as we've discussed it. Mr. Miller's testimony as a whole clearly establishes that there was a basis for the court to find that there was no hidden decay. Mr. Miller also testified that at some point, someone had been up in the roof and knew that there was an issue with these trusses because they had tried to support it. So there's also evidence that nothing was hidden, but there was no decay to be hidden in the first place. And then there's only coverage for the collapse if one of those specified perils exist. And because none of those specified perils exist, there's no coverage. Did the court... I'm not remembering whether the district court... The idea that the evidence from the builder is inadmissible or lacks of grounding in expertise. Who called him? He was called by State Farm, I take... I mean, called by the plaintiff? Mr. Lopez. The builder. The evidence that you discount that he was a builder. Yes. He's the plaintiff's expert. Was there any... Did the district court treat him as an expert? I'm not remembering. No. Did the district court consider his testimony in the summary judgment? No, he did not provide testimony. Did the court say... He had a deposition. Qualify. Sorry. Go ahead. I thought he had a deposition testimony. That's how we know. That's why we're talking about him, aren't we? He gave a deposition? No, he was not deposed. Okay. Why are we talking about him then? The appellant brought him up. Okay. About humidity. Okay. But did he just have a statement in the record? Well, he did have a report that was in the record. Thank you. I'm sorry. I apologize. The court did not say he was not qualified under Daubert or anything like that? No, the court did not say that. Well, some builders would be qualified to talk about that sort of thing, right? Well... Yes. Yes. Yes, I suppose so. All right. Thank you. I'd just like to address the testimony or the report was from Mr. Wise. Mr. Wise was referred to in the decision by Judge Drain denying the motion for partial summary disposition and granting state firms as urban builders retained Lopez Engineering to inspect the integrity of the building and the remaining portions of the ceiling. And Michael Wise, who was an engineer, is the person who said, who presented a report that said... I hired urban builders. I just... Urban builders, as soon as the collapse occurred, the church went out and hired urban builders who said, we better get an engineer. And the engineer said it was partially due to the years of the trusses moving back and forth and partially due to the water. But I'm looking at the definitions of decay, which... They don't say anything about something being added to the mix. They say that it has to be something that deteriorates over time. And even Judge... Excuse me. Even Mr. Miller wrote in his report, it's on page five of my brief, age is an issue with regard to the sustained high dead load bending stresses in the truss cord members because wood has decreased strength values when subjected to high long term loading. The ceiling metal lath is nailed to the wood framing supported by the trusses. And then it goes on to say, lateral loads on the nails plus constant tension on the nails can result in the nails loosening over many years. And that's what causes the ceiling to collapse. And based on the dictionary definitions of decay, which the court didn't look to, but instead looked to a different definition, the lower court, there is at least a question of fact as to whether or not this long term 85 year process, no matter what caused it, you've got decay that is hidden from view, unknown to an insured, presuming we have that and can convince and persuade a jury or the court that that exists, then we have coverage. So I think that that certainly opens up the door. The definition needs to be looked at, the dictionary definitions need to be looked at, and the dictionary definitions adopted by the Court of Appeals, the Michigan Court of Appeals and Hani and Ramiz, where they basically said it's a long term deteriorating process. Thank you. We have your matter. As you've heard me say over and over, you'll receive an opinion. Thank you so much. Thank you.